**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSEPH LINO PADILLA,
*Address filed under seal*
Plaintiff,

-against-

UNITED STATES OF AMERICA,
c/o U.S. Attorney General's Office, District of Columbia, 950 Pennsylvania Avenue, NW
Washington, DC 20530

MERRICK GARLAND, individually,
*c/o Arnold & Porter 601 Massachusetts Ave, NW Washington, DC 20001-3743*

MATTHEW GRAVES, individually,
*c/o Winston Taylor LLP, 1901 L Street NW, Washington, DC 20036*

DONALD W. WASHINGTON, individually,
*Jones Walker LLP, Suite 1600, 600 Jefferson St, Lafayette, LA 70501*

KATHLEEN LANDERKIN, individually,
*Warden, Baltimore Pre-Trial Complex,*
*300 E. Madison Street, Baltimore, MD 21202*

ROBERT ANTHONY DIXON, individually,
*U.S. Marshals Service, Superior Court of D.C., Moultrie Courthouse, 500 Indiana Avenue NW, Washington, DC 20001*

and

JOHN DOES 1-25, individually,
*c/o Federal Detention Center Philadelphia, 700 Arch Street, Philadelphia, PA 19106,*

Defendants.

Civil Action No.

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff JOSEPH LINO PADILLA (hereinafter, "Plaintiff" or "Padilla") by and through his attorneys, Raiser, Kenniff & Lonstein, P.C. brings this Complaint and respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages arising from Defendants' violations of Plaintiff's rights under the United States Constitution, as well as for tortious conduct actionable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

2. Plaintiff was targeted, arrested, prosecuted, detained, and punished because of his actual and perceived political viewpoints, expressive activity, associations, and participation in events surrounding January 6, 2021 (hereinafter, the group of people prosecuted for their activities at or near the Capitol Building on January 6th, 2021 will be referred to as the "January 6th Defendants"). Defendants selectively and disproportionately exercised governmental authority against Plaintiff as part of a broader campaign directed at January 6th Defendants. Through retaliatory prosecution, discriminatory detention practices, deliberate indifference to Plaintiff's health and safety, and other unlawful conduct, Defendants violated Plaintiff's constitutional rights and caused severe physical, emotional, reputational, and economic injury.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Jurisdiction over Plaintiff's constitutional claims against individual federal officers is conferred by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and its progeny.

6. Jurisdiction over Plaintiff's claims against defendant UNITED STATES OF AMERICA (the "United States") is conferred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

7. To the extent Plaintiff asserts constitutional claims against District of Columbia correctional officials acting under color of District of Columbia law, jurisdiction is also conferred by 42 U.S.C. § 1983.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(e) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the District of Columbia, including the prosecution, detention, incarceration, and other conduct challenged herein.

9. This Court has personal jurisdiction over defendant KATHLEEN LANDERKIN pursuant to the District of Columbia Code §§ 13-422 and 13-422(a)(3).

10. Plaintiff filed administrative grievances to timely contest his mistreatment during his pre-trial detention, but does not know what, if anything, came of those grievances. Many of the grievances were resolved with a finding that no action needs to be taken, and Plaintiff was not told he could appeal. Other grievances were "blackboxed" and Plaintiff did not understand the process for advancing his grievance forward. Plaintiff was retaliated against for filing grievances.

11. In other words, Plaintiff exhausted all administrative remedies that were available to him. To the extent Defendants contend otherwise, the grievance system was unavailable because grievances were not processed, Plaintiff was not informed of appeal rights, grievances were

resolved without meaningful review, and officials retaliated against Plaintiff for using the grievance system.

12. On or about August 11, 2025, Plaintiff transmitted an administrative Notice of Claim to the United States Department of Justice ("DOJ") setting forth the factual basis for his claims and demanding a sum certain. More than six months elapsed without final denial.

13. As of the date of this Complaint, the United States failed to settle or issue a final denial of Plaintiff's claims within the statutory period. More than 180 days had elapsed, resulting in constructive exhaustion under 28 U.S.C. § 2675(a).

## PARTIES

14. Plaintiff is a United States citizen and resident of Bradley County, State of Tennessee.

15. Defendant UNITED STATES OF AMERICA ("United States") is sued pursuant to the FTCA for tortious acts and omissions of federal employees acting within the scope of their employment.

16. Defendant MERRICK GARLAND ("Garland") is sued in his individual capacity for actions taken while serving as Attorney General of the United States.

17. Defendant MATTHEW M. GRAVES ("Graves") is sued in his individual capacity for actions taken while serving as United States Attorney for the District of Columbia.

18. Defendant DONALD W. WASHINGTON ("Marshal Washington") is sued in his individual capacity for actions taken while serving as the director of the United States Marshals Service ("USMS").

19. Defendant DEPUTY WARDEN KATHLEEN LANDERKIN ("Deputy Warden Landerkin") is sued in her individual capacity for actions taken while serving as the Deputy Warden of the D.C. Jail.

20. Defendant ROBERT ANTHONY DIXON ("Marshal Dixon") is sued in his individual capacity for actions taken while serving as the U.S. Marshal for the USMS for the Superior Court of the District of Columbia.

21. JOHN DOES 1-25, individually, include but are not limited to unknown agents, officers, employees, supervisors, policymakers, prosecutors, public-affairs personnel, and other officials of the United States Department of Justice, the United States Attorney's Office for the District of Columbia, and/or the Federal Bureau of Investigation who personally participated in, directed, approved, ratified, supervised, or knowingly permitted the investigative, public-facing, charging, prosecutorial, search, arrest, or other law-enforcement actions complained of herein.

## FACTUAL ALLEGATIONS

22. Plaintiff is a veteran of the United States military whose service left him 100% disabled. Plaintiff completed two combat deployments in support of Operation Iraqi Freedom before being honorably discharged. As a result of those deployments, the Department of Veterans Affairs ultimately determined that Plaintiff was permanently and totally disabled due to service-connected conditions, including Post-Traumatic Stress Disorder, degenerative spinal injuries, and chronic respiratory illness.

23. After his service-connected disabilities prevented him from continuing full-time employment, Plaintiff assumed primary responsibility for raising his three sons while his wife Rebekah worked outside the home. He was deeply involved in the daily lives of his three children – helping with schoolwork, participating in Boy Scouts, attending camping trips and activities, and serving as the family's primary caregiver as his wife worked outside the home.

24. Plaintiff's stable adult life stood in stark contrast to his own upbringing, which was marked by profound dysfunction, domestic instability, substance abuse, homelessness, and

physical and emotional abuse. Despite this extraordinary personal adversity, Plaintiff married his childhood friend Rebekah, honorably served his country in the United States Army, and built a stable home where his life as a disabled combat veteran revolved around being a father to his children.

25. Prior to January 6th, 2021, Plaintiff had no criminal history.

26. On January 6th, 2021, a joint session of the United States Congress convened at approximately 1:00 p.m. to certify the Electoral College vote of the 2020 Presidential Election.

27. On that day, Plaintiff was present in Washington, D.C. with his wife, brother-in-law, and sister-in-law to exercise his First Amendment rights by attending a political rally and protesting the certification of the Electoral College vote.

28. FBI agents visited Padilla's home on January 14, 2021, notifying Plaintiff that he was under investigation. Plaintiff did not flee, destroy evidence, or act in a way contrary to his intent to cooperate with law enforcement. Instead, Plaintiff contacted an attorney and continued his daily routine of managing the family home and acting as the primary caregiver to his three children.

29. Plaintiff was arrested on February 22, 2021.

30. Subsequently, Plaintiff was indicted on March 12, 2021. The criminal action proceeded in the United States District Court, District of Columbia, under Case No. 21-cr-214.

31. A final superseding indictment was entered on April 12, 2023. Plaintiff was charged with violating:

a. 18 U.S.C. § 111(a)(1): Assaulting, Resisting, or Impeding Certain Officers

b. 18 U.S.C. §§ 111(a)(1) and (b): Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon

c. 18 U.S.C. § 231(a)(3): Civil Disorder

d. 18 U.S.C. §§ 1512(c)(2): Obstruction of an Official Proceeding (and Aiding and Abetting)

e. 18 U.S.C. § 1752(a)(1) and (b)(1)(A): Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

f. 18 U.S.C. § 1752(a)(2) and (b)(1)(A): Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

g. 18 U.S.C. § 1752(a)(4) and (b)(1)(A): Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

h. 40 U.S.C. § 5104(e)(2)(D): Disorderly Conduct in a Capitol Building

i. 40 U.S.C. § 5104(e)(2)(F): Act of Physical Violence in the Capitol Grounds or Buildings

32. Notably, Plaintiff was charged with violating 18 U.S.C. § 1512(c)(2), obstruction of an official proceeding.

33. Prior to his trial, plaintiff was denied bond and was subject to pre-trial detention at, amongst other places, the D.C. Jail.

34. The Deputy Warden of the D.C. Jail was defendant Deputy Warden Landerkin, who was known to have extreme animus toward Trump supporters.

35. This animus was expressed by making the following now-deleted posts on the social media site "X" (formerly known as Twitter):

a. "F--- everyone who supports Trump" (November 24, 2019);

b. "How are we allowing Trump and his lackeys destroy our country?" (November 24, 2019);

c. "About time they stop giving Trumps mouthpieces time to spew their lies" (February 8, 2020);

d. "Trump is doing more damage to this county then foreign terrorists ever have" (September 11, 2020);

e. "… if you are in the crowd behind Trump you are trash. While very animated, you are without conscious, feeling or morals…" (October 13, 2019);

f. "… Republican fascist" (July 27, 2019).[1]

36. Despite this known animus, the United States government, by and through its employees defendants Marshal Washington and Marshal Dixon, placed Plaintiff in the D.C. Jail for his pre-trial detention.

37. Upon information and belief, Defendants Washington and Dixon were responsible, in whole or in part, for decisions regarding the placement, transfer, housing, and continued detention of federal pretrial detainees, including January 6th Defendants housed at the D.C. Jail.

38. Upon information and belief, Washington and Dixon knew or reasonably should have known that Deputy Warden Landerkin had publicly expressed hostility toward supporters of President Donald J. Trump and individuals associated with the January 6 protests.

39. The statements attributed to Deputy Warden Landerkin were publicly available and widely circulated, including through social-media posts and public reporting.

40. Upon information and belief, Washington and Dixon knew or reasonably should have known that the continued placement of January 6 detainees in a facility operated by officials harboring such animus created a substantial risk that those detainees would be subjected to

[1] https://x.com/alexbruesewitz/status/1469666224552517637

discriminatory treatment, punitive conditions, unequal treatment, retaliation, or other constitutional deprivations.

41. Despite that knowledge, Washington and Dixon continued authorizing, approving, maintaining, or permitting Plaintiff's placement and continued detention at the D.C. Jail.

42. Upon information and belief, Washington and Dixon received inspection reports, grievances, judicial findings, or other notice concerning the conditions affecting January 6 detainees and nevertheless continued Plaintiff's placement there.

43. During his detention, Plaintiff was presumed innocent and had not been convicted of any offense.

44. During his detention, Plaintiff was housed among a group of detainees commonly referred to by correctional officials, government personnel, media organizations, and the public as "January 6th Detainees."

45. Upon information and belief, January 6th Detainees were subjected to restrictions, conditions, and treatment materially different from those imposed upon similarly situated federal pretrial detainees who were not charged in connection with events occurring on January 6, 2021.

46. Plaintiff and other January 6th Detainees were subjected to prolonged lockdowns, extensive restrictions on movement, recreation, social interaction, and visitation. These restrictions resulted in severe emotional distress, isolation, and deterioration of family relationships.

47. Plaintiff and other January 6th Detainees repeatedly attempted to challenge these conditions through the grievance process. Correctional staff routinely obstructed those efforts by refusing grievance forms, delaying responses, altering submissions, discouraging complaints, and retaliating against detainees who sought administrative review.

48. The conditions imposed upon Plaintiff were not the product of individualized security assessments.

49. Plaintiff did not present a unique institutional threat that justified the restrictive conditions under which he was confined.

50. Defendants nevertheless maintained these restrictions for prolonged periods of time.

51. Upon information and belief, Defendants were aware of widespread complaints concerning the treatment of January 6th Detainees and the conditions under which they were confined.

52. Defendants received grievances, correspondence, reports, complaints, media inquiries, and other information placing them on notice of the conditions described herein.

53. Despite such notice, Defendants failed to take reasonable steps to remedy the unconstitutional conditions imposed upon Plaintiff.

54. The conditions described herein were excessive in relation to any legitimate governmental objective and functioned as punishment of Plaintiff before adjudication of guilt.

55. On May 3, 2023, following a bench trial, Plaintiff was convicted on multiple counts arising from the events of January 6, 2021. Plaintiff was acquitted of at least one assault-with-a-dangerous-weapon charge and continued to challenge the legal and factual basis of several remaining convictions through post-trial proceedings and appeal.

56. On September 18, 2023, Plaintiff was sentenced to 6 years and 6 months of prison time, with credit for time served.

57. On June 28, 2024, the Supreme Court of the United States issued its decision in *Fischer v. United States*, 603 U.S. 480 (2024), substantially narrowing the scope of 18 U.S.C. §

1512(c)(2) and rejecting the expansive interpretation utilized in many January 6th prosecutions. Following *Fischer*, Plaintiff's conviction under 18 U.S.C. § 1512(c)(2) was vacated and remanded for further proceedings.

58. Following the pardon of all January 6th defendants by President Trump, all of the charges against Plaintiff were dismissed by the government on January 21, 2025.

**THE GOVERNMENT'S JANUARY 6 ENFORCEMENT CAMPAIGN**

59. Following January 6, 2021, the United States Department of Justice publicly announced that the investigation and prosecution of January 6th Defendants would constitute one of the largest criminal enforcement efforts in the history of the Department.

60. At all relevant times, Defendant Merrick Garland served as Attorney General of the United States and exercised supervisory authority over Department-wide policies concerning January 6 investigations and prosecutions.

61. At all relevant times, Defendant Matthew Graves served as United States Attorney for the District of Columbia and exercised supervisory authority over January 6 prosecutions within the District of Columbia.

62. Throughout their respective tenures, Garland and Graves repeatedly described January 6 prosecutions as among the Department's highest priorities and publicly emphasized the importance of those prosecutions in official statements, media appearances, congressional testimony, and Department of Justice communications.

63. Upon information and belief, Garland and Graves approved, implemented, supervised, ratified, or knowingly permitted investigative, charging, detention, plea-negotiation, sentencing, and appellate policies applicable to January 6 defendants, including Plaintiff.

64. Upon information and belief, Garland and Graves approved or ratified the Department's widespread use of 18 U.S.C. § 1512(c)(2) despite substantial judicial disagreement concerning the scope of that statute and despite knowing that the charge materially increased detention exposure, sentencing exposure, and prosecutorial leverage.

65. Throughout Plaintiff's prosecution, Defendants relied upon an expansive interpretation of 18 U.S.C. § 1512(c)(2) to dramatically increase Plaintiff's criminal exposure. That charging theory substantially increased Plaintiff's sentencing risk, affected detention decisions, enhanced the public significance of the prosecution, and provided Defendants with considerable leverage throughout the criminal proceedings. The Supreme Court ultimately rejected that expansive interpretation in *Fischer v. United States*, confirming that the Government's principal charging theory exceeded the statute's proper scope.

66. Plaintiff alleges that these policies subjected January 6th Defendants, including Plaintiff, to materially harsher investigative, charging, detention, and sentencing practices than similarly situated criminal defendants and were intended, at least in part, to maximize deterrent effect and public example-making.

## AS AND FOR A FIRST CAUSE OF ACTION

*42 U.S.C. § 1983*
*Violation of the First and Fifth Amendments*
*Unconstitutional Conditions of Pretrial Confinement*

67. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

68. At all relevant times, Plaintiff was a federal pretrial detainee housed at the D.C. Jail and was presumed innocent of all criminal charges.

69. Defendant Landerkin and the Doe Defendants acted under color of District of Columbia law.

70. The First Amendment protects the rights of individuals to engage in political speech, political association, expressive activity, petitioning activity, and other constitutionally protected conduct free from government retaliation, viewpoint discrimination, or political reprisal.

71. The Due Process Clause of the Fifth Amendment prohibits the punishment of pretrial detainees prior to an adjudication of guilt.

72. Plaintiff was detained because he had been charged in connection with the events of January 6, 2021 and was housed among other detainees similarly charged.

73. Upon information and belief, Defendants viewed Plaintiff and other January 6 detainees with hostility because of their actual or perceived political beliefs, political associations, support for President Donald J. Trump, participation in political demonstrations, and opposition to positions favored by Defendants.

74. Upon information and belief, Defendants intentionally subjected Plaintiff and other January 6 detainees to restrictions, conditions, and treatment materially different from those imposed upon similarly situated pretrial detainees who were not associated with January 6.

75. These restrictions included, but were not limited to, prolonged lockdowns, severe limitations on movement, recreation, visitation, communication, social interaction, and access to ordinary privileges afforded to other detainees.

76. Plaintiff further attempted to challenge these conditions through available grievance procedures and other complaints. Defendants obstructed, discouraged, ignored, altered, delayed, or retaliated against such efforts.

77. The restrictions imposed upon Plaintiff were not the product of individualized security determinations, disciplinary findings, or legitimate correctional necessities specific to Plaintiff.

78. Rather, upon information and belief, Defendants imposed and maintained these restrictions because of Plaintiff's actual or perceived political beliefs, associations, expressive conduct, protected activity, status as a January 6 defendant, and/or his attempts to complain about unconstitutional treatment.

79. The conditions imposed upon Plaintiff were excessive in relation to any legitimate governmental objective and were not reasonably related to institutional security, order, or administration.

80. As a result, the conditions functioned as punishment imposed upon Plaintiff before any adjudication of guilt.

81. By intentionally imposing punitive restrictions unrelated to legitimate governmental objectives, Defendants violated Plaintiff's rights under the Due Process Clause of the Fifth Amendment.

82. By imposing adverse treatment because of Plaintiff's actual or perceived political beliefs, political associations, protected expressive activity, status as a January 6 defendant, and/or complaints regarding jail conditions, Defendants violated Plaintiff's rights under the First Amendment.

83. Defendants acted intentionally, willfully, maliciously, recklessly, and with deliberate indifference to Plaintiff's constitutional rights.

84. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, anxiety, psychological injury, pain and suffering, damage to reputation, and other economic and non-economic damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
*Fifth Amendment Equal Protection* – Bivens
*Federal Individual Defendants*

85. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

86. Defendants Garland and Graves (the "DOJ Defendants") personally participated in, approved, implemented, supervised, ratified, or knowingly permitted Department of Justice policies and practices governing the investigation, charging, detention, prosecution, and sentencing of January 6th Defendants, including Plaintiff.

87. Upon information and belief, those policies included the widespread use of 18 U.S.C. § 1512(c)(2), aggressive detention positions, enhanced charging decisions, and litigation strategies designed to increase detention exposure, sentencing exposure, prosecutorial leverage, public deterrence, and public example-making in January 6th cases.

88. Plaintiff alleges that the DOJ Defendants intentionally subjected January 6th Defendants, including Plaintiff, to investigative, charging, detention, and prosecutorial practices materially different from those employed against similarly situated criminal defendants because of their actual or perceived political viewpoints, associations, and participation in events occurring on January 6, 2021.

89. Further, although there was no objective evidence that Plaintiff presented a danger to law enforcement or was going to evade arrest, and although Plaintiff had previously cooperated with law enforcement, Plaintiff was arrested in a highly militarized manner, with armored vehicles, flashbang devices, drones, and heavily armed personnel with guns drawn.

90. Upon information and belief, similarly situated defendants not associated with January 6 investigations were routinely afforded opportunities to surrender voluntarily or otherwise resolve comparable nonviolent charges without the use of militarized arrest tactics. Defendants nevertheless elected to employ extraordinary tactical measures against Plaintiff because of his association with January 6 and the Government's broader objective of maximizing

the public deterrent effect of those prosecutions, despite the fact that Plaintiff remained in his home and did not flee or otherwise attempt to evade law enforcement after he learned that the Government was investigating him for his actions on January 6th.

91. Upon information and belief, the DOJ Defendants received regular briefings concerning January 6th investigations and prosecutions, were aware of the policies challenged herein, and knowingly approved, ratified, or permitted their continued implementation.

92. No sufficient governmental interest justified the disparate treatment imposed upon Plaintiff. In the alternative, Defendants lacked a rational basis for treating Plaintiff differently from similarly situated defendants prosecuted for comparable conduct.

93. The DOJ Defendants' conduct violated the equal protection component of the Fifth Amendment and directly and proximately caused Plaintiff to suffer loss of liberty, emotional distress, reputational injury, economic loss, and other damages.

## AS AND FOR A THIRD CAUSE OF ACTION

*Fifth Amendment Due Process – Bivens*
*Deliberate Indifference to Known Risk of Constitutional Injury*
*Against Defendants Donald W. Washington and Robert Anthony Dixon*

94. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

95. At all relevant times, Washington and Dixon exercised authority over the placement, transfer, housing, and continued detention of federal pretrial detainees, including Plaintiff and other January 6th Detainees.

96. Upon information and belief, Washington and Dixon knew or reasonably should have known that Deputy Warden Kathleen Landerkin had publicly expressed hostility toward supporters of President Donald J. Trump and individuals associated with January 6, 2021.

97. Upon information and belief, Washington and Dixon further knew or reasonably should have known that placing January 6th Detainees in a facility operated by officials harboring such animus created a substantial risk that those detainees would be subjected to discriminatory treatment, punitive confinement conditions, retaliation, unequal treatment, and other constitutional deprivations.

98. Washington and Dixon received grievances, complaints, correspondence, reports, judicial findings, media coverage, and other information concerning the treatment of January 6th Detainees housed at the D.C. Jail and were therefore on notice of the risks described herein.

99. Despite such notice, Washington and Dixon continued authorizing, approving, maintaining, or permitting Plaintiff's placement and continued detention at the D.C. Jail.

100. Washington and Dixon failed to take reasonable measures to protect Plaintiff from foreseeable constitutional injuries arising from the conditions of confinement and discriminatory treatment described herein.

101. Their actions and omissions were intentional, reckless, malicious, or undertaken with deliberate indifference to Plaintiff's constitutional rights.

102. As a direct and proximate result of the foregoing, Plaintiff suffered loss of liberty, emotional distress, physical injury, reputational harm, and economic damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
*Malicious Prosecution - FTCA*

103. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

104. This claim is asserted solely against Defendant UNITED STATES OF AMERICA ("United States") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

105. Acting through federal investigative and law-enforcement personnel acting within the scope of their employment, Defendant United States caused criminal proceedings to be

initiated and continued against Plaintiff under 18 U.S.C. § 1512(c)(2) in *United States v. Padilla*, No. 21-cr-214 (D.D.C.).

106. The conduct giving rise to this claim includes the investigation, presentation, and continued pursuit of the § 1512(c)(2) obstruction charge against Plaintiff, separate and apart from any other criminal charges asserted against him.

107. At all relevant times, federal officials knew or should have known that substantial legal questions existed regarding the scope and applicability of 18 U.S.C. § 1512(c)(2) to the conduct alleged against Plaintiff.

108. Despite those substantial legal deficiencies, federal officials continued pursuing the § 1512(c)(2) charge against Plaintiff through pretrial proceedings, trial, post-trial litigation, and appeal.

109. Upon information and belief, federal officials intentionally pursued the § 1512(c)(2) charge despite serious doubts concerning whether Plaintiff's alleged conduct fell within the proper scope of the statute.

110. Plaintiff alleges that the § 1512(c)(2) charge was pursued without probable cause because the conduct attributed to Plaintiff did not satisfy the essential elements ultimately recognized by the Supreme Court of the United States in *Fischer v. United States*.

111. Plaintiff further alleges that federal officials acted with malice and for improper purposes, including the desire to secure enhanced detention, increased sentencing exposure, and increased leverage against Plaintiff beyond that otherwise available under the remaining charges.

112. On June 28, 2024, the Supreme Court issued its decision in *Fischer v. United States*, substantially narrowing the scope of 18 U.S.C. § 1512(c)(2).

113. Following *Fischer*, Plaintiff's conviction under 18 U.S.C. § 1512(c)(2) was vacated and remanded for further proceedings.

114. The termination of Plaintiff's prosecution under 18 U.S.C. § 1512(c)(2) constituted a favorable termination of that charge.

115. As a direct and proximate result of the malicious prosecution of Plaintiff under 18 U.S.C. § 1512(c)(2), Plaintiff suffered loss of liberty, emotional distress, reputational injury, legal expenses, economic damages, and other injuries.

116. Plaintiff's damages include, but are not limited to, enhanced pretrial detention exposure, increased sentencing exposure, increased litigation burdens, emotional distress, reputational harm, and other consequential damages resulting from the prosecution of the § 1512(c)(2) charge.

117. Pursuant to the FTCA, Defendant United States is liable for the injuries and damages proximately caused by the actions of its investigative and law-enforcement personnel acting within the scope of their employment.

**AS AND FOR A FIFTH CAUSE OF ACTION**
*Abuse of Process – FTCA*

118. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

119. This claim is asserted solely against Defendant United States of America (the "United States") pursuant to the Federal Tort Claims Act.

120. Acting through its investigative and law-enforcement personnel acting within the scope of their employment, the Unites States employed and continued criminal process against Plaintiff for purposes beyond the legitimate adjudication of criminal liability.

121. Upon information and belief, federal officials used criminal process, including the continued pursuit of charges under 18 U.S.C. § 1512(c)(2), to obtain collateral objectives unrelated

to the proper purpose of criminal proceedings, including increasing Plaintiff's detention exposure, sentencing exposure, litigation burdens, and public stigmatization, and maximizing the deterrent effect of January 6th prosecutions.

122. Federal officials continued utilizing such process despite substantial legal challenges to the Government's interpretation of 18 U.S.C. § 1512(c)(2) and despite knowing that the challenged charge materially increased prosecutorial leverage and the consequences faced by Plaintiff.

123. Upon information and belief, federal officials used and maintained criminal process not solely to adjudicate Plaintiff's alleged criminal liability, but also to increase leverage over Plaintiff and similarly situated January 6th Defendants and to create public deterrence through the use of enhanced criminal charges.

124. Throughout Plaintiff's prosecution, Defendants relied upon an expansive interpretation of 18 U.S.C. § 1512(c)(2) to dramatically increase Plaintiff's criminal exposure. That charging theory substantially increased Plaintiff's sentencing risk, affected detention decisions, enhanced the public significance of the prosecution, and provided Defendants with considerable leverage throughout the criminal proceedings. The Supreme Court ultimately rejected that expansive interpretation in *Fischer v. United States*, confirming that the Government's principal charging theory exceeded the statute's proper scope.

125. The acts described herein constituted a willful misuse of criminal process for purposes other than those for which such process was designed.

126. As a direct and proximate result of the United States's abuse of process, Plaintiff suffered loss of liberty, emotional distress, reputational injury, economic loss, litigation expenses, and other damages.

127. Defendant United States is liable for those injuries pursuant to the Federal Tort Claims Act.

**AS AND FOR A SIXTH CAUSE OF ACTION**
*Intentional Infliction of Emotional Distress - FTCA*

128. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

129. Defendant the United States, by and through its employees and agents, engaged in extreme and outrageous conduct, including arresting Plaintiff in a SWAT-style raid utilizing flashbang devices, drones, and armored vehicles, overcharging Plaintiff under inapplicable statutes, and intentionally and recklessly placing Plaintiff in unsafe and inappropriate detention and incarceration facilities.

130. Defendant United States, by and through its employees and agents, acted intentionally or with reckless disregard of the high probability that their conduct would cause severe emotional distress.

131. The afore-described conduct was the proximate cause of Plaintiff's injuries.

132. As a result of the afore-described conduct, Plaintiff suffered severe emotional distress, including anxiety, trauma, humiliation, sleep disturbance, and fear of permanent disability or death.

**WHEREFORE**, and for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in the Plaintiff's favor,

a. Awarding compensatory damages to the Plaintiff, plus post-judgment interest;

b. Awarding punitive damages to the Plaintiff;

c. Awarding Plaintiff reasonable costs, disbursements, and attorney's fees; and

d. Awarding any such other and further relief as this Court finds is required in the interest of justice.

Dated: September 18, 2026

Respectfully submitted,

/s/*Alexander Lonstein*
Alexander Lonstein
RAISER, KENNIFF &
LONSTEIN, P.C.
99 Park Avenue, Suite 1530
New York, NY 10016
alexander@rkl.law